**Petition Denied; Affirmed in Part; Affirmed as Modified in Part; Reversed in Part; Remanded; and Opinion and Dissenting Opinion filed November 20, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-01125-CV

**NATIONAL CITY BANK OF INDIANA AND HOME LOAN SERVICES, INC.,**
**Appellants/Cross-Appellees**

**V.**

**ALBERT ORTIZ, Appellee/Cross-Appellant**

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2006-61178**

### NO. 14-10-01262-CV

**IN RE ALBERT ORTIZ, Relator**

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**

# O P I N I O N

In this opinion, we address cross-appeals and a mandamus petition arising out of the foreclosure of a residential property. The borrower, Albert Ortiz, sued the bank and its mortgage servicer for a variety of claims including wrongful foreclosure, breach of contract, negligence, trespass to real property, trespass to personalty, and conversion. The bank counterclaimed to recover on the note and to judicially foreclosure the deed-of-trust lien, and the borrower responded that the bank's representative had signed letter agreements waiving and releasing the bank's claims. The trial court granted summary judgment in favor of the borrower on his wrongful-foreclosure claim, set aside the foreclosure sale, and restored title in the property to the borrower. The trial court also granted partial summary judgments allowing the bank to pursue claims under the deed of trust, but not to pursue claims arising from the promissory note. After a jury trial, the trial court rendered judgment in the borrower's favor on his claims for breach of contract, trespass to personalty, and gross negligence, and ruled against the bank and mortgage servicer on all of their claims, instead declaring that the borrower had no further obligations under the note and deed of trust.

The effect of the trial court's judgment was to award the home to the borrower free and clear of all debt on this loan (on which he had repaid none of the $472,000 principal) and to additionally award him damages and attorney's fees in the amount of $497,600.

We conclude that the trial court erred in (a) granting summary judgment in Ortiz's favor on his argument that the bank waived or released its claims, and in incorporating the erroneous interlocutory rulings into the final judgment; (b) denying the bank's motions challenging the legal sufficiency of the evidence to support the jury's finding that the bank breached the deed of trust before the borrower did; (c) denying the bank's claim for judicial foreclosure; and (d) declaring that the note and deed of trust are "fully, completely and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing." The trial court did not err, however, in (e) applying the

2

one-satisfaction rule to limit the damages awarded to the borrower, (f) failing to render judgment that the bank's judicial-foreclosure claim was time-barred, or (g) denying the borrower's motion to expunge the notice of lis pendens. In light of our disposition of these issues, we deny the borrower's petition for a writ of mandamus, reverse the judgment in part, affirm it in part, affirm it as modified in part, and remand the case for retrial of the bank's claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 2004, Albert Ortiz, the plaintiff below, purchased a house ("the Birdsall Property" or "the Property"), and financed it by executing a promissory note ("the Note") secured by a deed of trust ("the Deed of Trust"). At all material times, defendant National City Bank of Indiana ("National City") was the owner and holder of the Note and the beneficiary of the Deed of Trust, and defendant Home Loan Services, Inc. ("HLS") was the mortgage servicer.

Ortiz consistently paid late or missed payments. On November 1, 2005, HLS mailed Ortiz a notice of its intent to accelerate the loan, but sent the letter to an incorrect address. On December 21, 2005, HLS notified Ortiz by mail that it had accelerated the loan, but once again, the letter was misaddressed. During this same time period, HLS caused the locks at the home on the Property to be changed, and although Ortiz did not reside there, he kept personal property there that was never returned to him.

At the request of Ortiz's attorney, HLS faxed the misaddressed documents to Ortiz's attorney on January 13, 2006. By that time, a foreclosure sale had been scheduled for February 7, 2006. Although that sale did not take place, Ortiz continued to miss payments, and the Property was posted for a foreclosure sale to occur on June 6, 2006. That morning, Ortiz filed a lawsuit against National City and HLS (collectively, the "Bank Parties") to enjoin the sale. The trial court denied Ortiz's request for a temporary restraining order, and National City purchased the Property.

Less than three weeks later, Ortiz's attorney Michael Donovan bypassed HLS's counsel and contacted an HLS employee directly, asking the employee to execute a

3

proposed letter agreement that Donovan had drafted. The employee was not an attorney, and he forwarded the letter to another non-attorney employee who signed the letter agreement as an "Authorized Representative" of HLS and of National City's predecessor. Two weeks later, Donovan again bypassed HLS's attorney and sent a proposed amendment to the letter agreement to the employee who had signed the first letter. The employee signed and returned the amendment as the authorized representative of National City. In these two letters ("the Letter Agreements"), National City stated that it "releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of [Ortiz], in connection with the [Property], including the note and deed of trust associated with such property."

Two months later, Ortiz filed another suit against the Bank Parties. Over the course of the litigation, he amended his petition eight times to add more parties and causes of action. As relevant here, he ultimately asserted that National City was liable to him for wrongful foreclosure and breach of the Deed of Trust, and that both of the Bank Parties were liable for negligence, conversion, trespass to realty, and trespass to personalty. Ortiz also requested a declaratory judgment that (a) he owes no further debt whatsoever to National City under the Note, the Deed of Trust, or otherwise, even if the trial court were to set aside the foreclosure sale; (b) through the Letter Agreements, National City waived or released its claims against Ortiz concerning his indebtedness under the Note and the Deed of Trust; and (c) the Letter Agreements do not fail for lack of consideration. In response to Ortiz's allegations regarding the Letter Agreements, National City raised the affirmative defense that the purported agreements were unsupported by consideration. National City also asserted counterclaims for breach of the Note and for judicial foreclosure of its lien on the Birdsall Property. In addition, National City asked for declaratory judgment that (a) the Letter Agreements are void because Ortiz's counsel obtained them by directly contacting a party that he knew was represented by counsel, thereby violating Texas Disciplinary Rule of Professional Conduct 4.02; and (b) if the foreclosure sale is void, then National City's deed-of-trust lien is valid, the debt is revived, and National City may proceed with a new foreclosure.

The trial court granted a partial summary judgment in Ortiz's favor as to his wrongful-foreclosure claim. In an order signed October 28, 2008, the trial court set aside the trustee's deed conveying title in the Property to National City and ordered title in the Property restored to Ortiz. That ruling is not challenged in this proceeding.

In a number of different explicit and implicit rulings, the trial court addressed the parties' arguments about the validity and effect of the Letter Agreements. In April 2009, the trial court granted Ortiz's motion for partial summary judgment on "Defendants' counterclaims" concerning the Letter Agreements. In June 2010, the trial court ruled again on the same summary-judgment motion and on an additional summary-judgment motion concerning Ortiz's claims and affirmative defenses on the same subject. In the June 2010 ruling, the trial court stated "findings" that the Letter Agreements (a) "lack consideration, and accordingly are not valid contracts to be enforced for all purposes; and (b) contain a "valid agreement to release/waive [Ortiz's] obligation on the Note." The trial court concluded that the Bank Parties were "to take nothing for any claim arising from the Note" but were "entitled to pursue claims as to the Deed of Trust."

Despite these rulings construing the effect of the Letter Agreements as a matter of law, the trial court submitted a question to the jury for a finding of fact concerning the meaning of the Letter Agreements. The jury found in pertinent part as follows:

- In the Letter Agreements, neither National City nor HLS "validly agree[d] that [Ortiz] would receive ownership and possession of the [Property] without obligation for further payments on the Note and that [HLS] and [National City] would not pursue any claims, lawsuits and/or obligations that they could have asserted against [Ortiz]."

The jury also found the following:

- Ortiz and National City each materially breached the Deed of Trust.

- National City breached the Deed of Trust first.

- National City's breach caused Ortiz damages of $100,000 in loss of rental income for his loss of use of the Property.

- HLS trespassed upon the Property, causing Ortiz damages of $77,000 in loss of rental income for his loss of use of the Property.

5

- HLS's negligence proximately caused Ortiz the loss of personal property having a fair market value of $10,000.

- HLS converted Ortiz's personal property having a fair market value of $1,500.

- HLS committed trespass upon personalty, causing Ortiz's loss of personal property having a fair market value of $1,500.

- HLS was grossly negligent, and should be assessed exemplary damages of $100.

- $400,000 is a reasonable fee for the necessary services of Ortiz's attorneys for preparation and trial of the case. The jury failed to assess any appellate attorneys' fees.

Both Ortiz and the Bank Parties filed motions in which they asked the trial court to disregard certain jury findings and to grant judgment on the verdict in other respects. Although the jury rejected Ortiz's contention that National City agreed not to pursue any claims concerning his indebtedness, the trial court granted Ortiz's motion to disregard the finding and explicitly incorporated the interlocutory summary judgments into the final judgment. The trial court impliedly granted the portion of the Bank Parties' motion in which they argued that, under the one-satisfaction rule, Ortiz was not entitled to recover multiple damage awards for each injury. The trial court also impliedly granted the portion of the Bank Parties' motion in which they argued that they were entitled to a settlement credit of $12,500, representing the amount paid by their alleged agent, Keystone Asset Management, Inc., to settle Ortiz's claims against it.

After applying the settlement credit, the trial court rendered judgment that Ortiz recover actual damages $87,500 from National City and $10,000 from HLS; exemplary damages of $100 from HLS; attorneys' fees of $400,000 from National City; pre- and post-judgment interest; and costs. In addition to the monetary awards, the trial court declared that the "Note and Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust," and that the Substitute Trustee's Deed of June 6, 2006 "resulting from Defendants' wrongful foreclosure of the Property[] is set aside,

6

rescinded, deemed null and void and of no effect."

Both Ortiz and the Bank Parties have appealed.

On the same day that it rendered final judgment, the trial court signed an order denying Ortiz's motion under Texas Property Code section 12.0071 to expunge a notice of lis pendens filed by the Bank Parties. Ortiz filed an original proceeding in this court seeking mandamus relief regarding this order. We consolidated the mandamus proceeding with the appeal.

## II. ISSUES PRESENTED

In their appeal, the Bank Parties assert the following two issues:

(1)     The trial court erred in granting judgment that Ortiz had no obligation on the Note and Deed of Trust because the Letters are not enforceable agreements.

(2)     Ortiz's prior breach of the Deed of Trust bars him from recovery for any alleged breach by National City; thus, the trial court erred in rendering judgment for Ortiz for breach-of-contract damages and attorney's fees.[1]

In his cross-appeal, Ortiz asserts the following cross-issues:

(1)     The trial court committed reversible error by failing to award Ortiz appellate attorney's fees against National City.

(2)     The trial court committed reversible error by failing to award Ortiz the amount of damages that the jury awarded Ortiz against HLS.

(3)     The trial court committed reversible error by applying a $12,500 settlement credit to the amount of Ortiz's damages against National City.

(4)     The trial court committed reversible error by failing to grant Ortiz judgment on his statute-of-limitations defense to National City's judicial-foreclosure claim.

In his original proceeding, Ortiz contends that the trial court clearly abused its discretion in denying his motion to expunge the Bank Parties' notice of lis pendens.

---

[1] HLS appealed the trial court's judgment, but it has not assigned any error or presented any argument challenging the trial court's money judgment against it.

7

### III. CLAIMS AGAINST NATIONAL CITY

**A.    Who Breached the Deed of Trust First?**

In its answers to separate questions, the jury found that National City and Ortiz both materially breached the Deed of Trust, but that National City breached the Deed of Trust first.  The Bank Parties contend that they conclusively established that Ortiz was the first to materially breach the Deed of Trust, and thus, the trial court erred in impliedly denying their motion to disregard this finding.

We review this challenge to the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's findings, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable jury could, and disregarding contrary evidence unless a reasonable jury could not.  *See City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005).  The evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review.  *Id*. at 827.  Evidence is legally insufficient only if (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact.  *Id*. at 810.

After reviewing the record under the applicable standard of review, we agree with the Bank Parties that the evidence is legally insufficient to support the jury's finding that National City breached the Deed of Trust first.

**1.    National City materially breached the Deed of Trust no earlier than November 1, 2005.**

The central dispute in this issue involves the construction of Section 15 of the Deed of Trust.  Under the terms of this section, the Bank Parties were required to send notices to Ortiz at the "notice address," which the parties agreed "shall be the Property Address unless [Ortiz] has designated a substitute notice address."  It is undisputed that Ortiz designated a substitute notice address, and therefore, his notice address was not the address of the Property.

But, under the unambiguous language of the Deed of Trust, sending a notice to Ortiz at an address other than his notice address could be a breach of the Deed of Trust only if the Deed of Trust required a notice to be sent. On November 1, 2005, HLS sent a notice of acceleration to Ortiz at the Property Address rather than to the notice address that Ortiz had designated. Because the terms of the Deed of Trust required any notice of acceleration to be sent to Ortiz's "notice address," the failure of National City's agent to send the notice to the correct address was a breach of the Deed of Trust. Although Ortiz offered evidence that the Bank Parties sent other documents and notices to him at the wrong address before November 1, 2005, this was the first time that a notice required under the Deed of Trust was misaddressed. As a matter of law, National City first breached the Deed of Trust by failing to send a required notice to Ortiz at his designated address on November 1, 2005. Although the jury also could have concluded that National City breached the Deed of Trust by declaring that Ortiz abandoned the property, or by securing or possessing the property without providing Ortiz proper advance notice of the intent to do so, there is no evidence that either of these events occurred before November 1, 2005. According to the undisputed evidence, the Birdsall Property was declared abandoned on November 8, 2005, and was secured on November 27, 2005. Thus, based on the unambiguous language of the Deed of Trust and the evidence adduced at trial, no rational jury could conclude that National City breached the Deed of Trust before November 1, 2005.

### 2. Ortiz materially breached the Deed of Trust not later than October 1, 2005.

Based on the instructions in the court's charge, the jury could have found that Ortiz materially breached the Deed of Trust by (a) "failing to occupy the Birdsall Property as his principal residence and/or secure the property pursuant to the terms of the Deed of Trust," (b) "failing to make payments as required under the Deed of Trust," or (c) "failing to keep the Birdsall Property insured." No reasonable jury could have found that Ortiz first breached the Deed of Trust in one of these ways after November 1, 2005.

The Deed of Trust provided that Ortiz "shall occupy, establish, and use the

9

Property as [his] principal residence within 60 days after the execution of [the Deed of Trust] and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy." Although Ortiz executed the Deed of Trust on March 15, 2004, he never resided at the Birdsall Property. Under the terms of his contract with the prior owners, he was required to lease the Property to them through July 2004 unless they notified Ortiz of their intent to vacate the premises earlier. Ortiz testified that the Bank Parties were informed of this at the closing on the Property, and it is undisputed that the prior owners vacated the premises without extending the lease. As a result, Ortiz could have established the Property as his principal residence at any time on or after August 1, 2004, but he did not do so. Thus, if the jury's finding that Ortiz materially breached the Deed of Trust was based on his failure to "occupy, establish, and use the Property as [his] principal residence," then the jury could not reasonably find that this breach first occurred later than October 1, 2004, i.e., sixty days after the expiration of the prior owners' lease.

The Deed of Trust further provided that Ortiz "shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." The Note specified that payments were due on the first day of every month. It is undisputed that Ortiz never made a monthly payment on or before its due date, and that he last made a payment in September 2005. If the jury based its finding that Ortiz materially breached the Deed of Trust on his failure to make payments when due, then the jury could not reasonably conclude that the breach first occurred later than October 1, 2005.

Finally, Ortiz was required under the terms of the Deed of Trust to keep the Birdsall Property insured. He admitted at trial that he purchased a year of coverage when he purchased the home in March 2004, but failed to renew coverage when it expired in April 2005. He did not reinsure the property for several months. Thus, he breached the insurance requirements of the Deed of Trust in April 2005.

Because National City breached the Deed of Trust no earlier than November 1, 2005, and Ortiz breached the same agreement not later than October 1, 2005, the

10

evidence is legally insufficient to support the jury's finding that National breached the Deed of Trust first. The trial court therefore erred in denying the Bank's motion to disregard this finding and in rendering judgment in Ortiz's favor on his breach-of-contract claim.

We accordingly sustain the Bank Parties' second issue,[2] and we reverse the portion of the judgment in which the trial court held National City liable to Ortiz for breach of contract and for attorney's fees. In light of our disposition of this issue, the first and third issues presented in Ortiz's cross-appeal are moot.

**B.      Did the Bank Parties Unambiguously Renounce Any Rights to Further Payment or Foreclosure If the June 2006 Foreclosure Were Reversed?**

In their first issue, the Bank Parties contend that the trial court erred in rendering judgment that Ortiz has no obligation on the Note and the Deed of Trust. In making this argument, they effectively challenge the legal sufficiency of the evidence on which the following rulings were based: (1) the interlocutory partial summary judgment of April 9, 2009; (2) the trial court's interlocutory order of June 14, 2010 granting in part and denying in part the parties' cross-motions for partial summary judgment; (3) the trial court's ruling, incorporated in the final judgment, granting in part and denying in part the parties' cross-motions for entry of judgment and to disregard certain jury findings; (4) the denial of the Bank Parties' motion to modify the judgment; (5) the denial of their motion for judgment notwithstanding the verdict; and (6) the denial of their motion for new trial.

When reviewing the legal sufficiency of the evidence, we apply the same standard of review regardless of the procedural vehicle used to raise the issue. *See City of Keller*, 168 S.W.3d at 823. That is, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that supports it. *Id.* at 822. We credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827.

---

[2] We have not addressed the issues in the same order in which they were presented by the parties.

11

**1.    The trial court erred in granting Ortiz partial summary judgment as to "any claim arising from the Note mentioned in the Letter Agreements."**

A party who has raised an affirmative defense and moves for summary judgment on that basis bears the burden of proving each essential element of the defense. *See Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012). Here, the Bank Parties asserted claims for amounts due under the Note and the Deed of Trust, to which Ortiz raised the affirmative defenses of waiver and release. *See* TEX. R. CIV. P. 94 (listing "waiver" and "release" as separate affirmative defenses). The Bank Parties then asserted an additional counterclaim in which they asked the trial court to "declar[e] the legal significance of the Letter Agreements." They asserted that the Letter Agreements were "null and void *ab initio* for failure of consideration and/or due to the fraud committed by Donovan, Ortiz's attorney, in obtaining the Letter Agreement[s]." They additionally argued that by retaining the benefits of the Letter Agreements, Ortiz ratified the foreclosure.

In the first summary-judgment motion at issue in this appeal, Ortiz sought judgment on the following grounds:

(a)    In the Letter Agreements, the Bank Parties expressly waived all claims against Ortiz;

(b)    The Bank Parties' claims for declaratory judgment were impermissible attempts to recast affirmative defenses as counterclaims;

(c)    No evidence supported the assertion that Ortiz ratified the foreclosure;

(d)    Failure of consideration does not render a waiver void because waivers require no consideration;

(e)    With respect to the Bank Parties' assertion that Donovan's alleged fraud in obtaining the Letter Agreements rendered those contracts void, Ortiz argued that

(i)    a violation of the Texas Disciplinary Rules of Professional Conduct does not give rise to a private cause of action, and

12

> (ii)   the Bank Parties could not establish that they relied on Donovan's failure to inform them of the lawsuit because their attorney's actual knowledge of the lawsuit was imputed to them, and because the lawsuit was filed as a matter of public record.
>
> (f)   In a supplement to the summary-judgment motion, Ortiz asserted that the evidence conclusively showed that National City breached the Deed of Trust, and thus, National City was liable for breach-of-contract damages and attorney's fees in an unspecified amount.

The Bank Parties responded that "[t]he Letter Agreements represent a release of liability which requires consideration," and that "[t]he only consideration possible for the Letter Agreements would be [Ortiz's] ratification of the foreclosure." They argued that because Ortiz moved to set aside the foreclosure,[3] there was no consideration. The Bank Parties had stated in their pleadings that the Letter Agreements were ambiguous, and although they denied in their summary-judgment response that the Letter Agreements were ambiguous, they nevertheless argued that if the agreements were ambiguous, then the ambiguity should be construed against Ortiz because his attorney drafted the letters. In addition, they argued that because Ortiz circumvented the Bank Parties' counsel in violation of the Texas Disciplinary Rules of Professional Conduct in order to obtain the Letter Agreements, there was at least a question of fact as to the parties' intentions. As for Ortiz's breach-of-contract claim, the Bank Parties asserted that as a result of Ortiz's repudiation and material breach of contract by failing to make payments when due, they were discharged from performing under the contract. They further asserted that Ortiz failed to plead or prove damages from the alleged breach.

In April 2009, the trial court granted Ortiz's partial summary-judgment motion without stating the grounds for the ruling; however, the trial court allowed the Bank Parties to amend their pleadings to assert claims for all amounts due "under the Deed of Trust." Ortiz then moved for summary judgment again, arguing that the Letter Agreements were express waivers of all claims against him, and that at the time the Bank

---

[3] Two years after the Letter Agreements were signed, the trial court set aside the sale because the required foreclosure notices were sent to the wrong address.

13

Parties executed the agreements, they were aware of Ortiz's lawsuit challenging the foreclosure. The Bank Parties again asserted that the Letter Agreements were releases that were unenforceable due to the absence of consideration, or alternatively, that the consideration for the releases was Ortiz's ratification of the foreclosure.

On June 14, 2010, the day before the start of the jury trial in this case, the trial court issued an order providing in pertinent part as follows:

> The Court has reviewed the following pleadings: Defendants' Motion for Partial Summary Judgment on their Declaratory Judgment Claim and Plaintiff's Motion for Summary Judgment as to Defendant's Counterclaims and as to Plaintiff's Declaratory Judgment Claim. After review of the foregoing pleadings, all responses, and arguments made during the Thursday June 3, 2010 pre-trial conference[, t]he Court enters the following findings and Orders:
>
> Both Motions are Granted in Part and Denied in Part.
>
> The Court finds,
>
> 1.    That the Letter Agreements making basis [sic] of the motions lack consideration, and accordingly are not valid contracts to be enforced for all purposes.
>
> 2.    That the portion of the afore-mentioned Letter Agreements concerning the Note on the subject property is a valid agreement to release/waive Plaintiff's obligation on the Note, under the tenants [sic] of Texas Business and Commerce Code § 3.604 and as of the date of the Letter Agreements.
>
> It is ORDERED, that [the Bank Parties] are entitled to take nothing for any claim arising from the Note mentioned in the Letter Agreements.
>
> It is ORDERED, that [the Bank Parties] are entitled to pursue claims as to the Deed of Trust on the subject property.

The basis for the trial court's ruling is stated in its "findings." As we previously have explained, "If summary judgment is proper, there are no facts to find and the legal conclusions have already been stated in the motion and the response." *Golden v. McNeal*, 78 S.W.3d 488, 495 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing

14

*IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997)).  Thus, "[t]he trial court should not make, and the appellate court cannot consider, such findings and conclusions in connection with a summary judgment."  *Id.*  Here, however, the trial court stated in its final judgment "that all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment."  In light of the pleadings requesting a declaratory judgment on the legal effect of the Letter Agreements, we construe the trial court's "findings" incorporated into the final judgment as the requested declaration.

Summary judgments may only be granted upon grounds expressly asserted in the summary-judgment motion.  TEX. R. CIV. P. 166a(c); *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam).  Here, however, the trial court ruled based on grounds that were not properly before it.  Thus, we conclude that the trial court erred in granting Ortiz's motions for summary judgment concerning the Bank Parties' claims under the Note because the rulings were not supported by grounds raised in the motions.

**a.  The trial court erred in granting partial summary judgment on a statutory ground that was not encompassed in Ortiz's summary-judgment motions.**

At a pretrial conference on June 3, 2010, less than two weeks before trial, Ortiz argued for the first time that the Letter Agreements were governed by a provision in this state's codification of the Uniform Commercial Code.  During the hearing, Ortiz argued that the Letter Agreements were enforceable even in the absence of consideration because Texas Business and Commerce Code section 3.604 provides that "[a] person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument . . . by agreeing not to sue or otherwise renouncing rights against the party by a signed record."  TEX. BUS. & COM. CODE ANN. § 3.604(a)(2) (West Supp. 2012).  No such grounds for summary judgment were presented in his written summary-judgment motions.  Although Ortiz argues on appeal that this basis for judgment was properly before the trial court based on the waiver arguments presented in his summary-judgment motions, those arguments were based solely on the common law,

as can be seen by the authorities he cited.

Ortiz argued in his summary-judgment motions that the Letter Agreements were express waivers for which no consideration was required. In support of this position, he cited cases showing that, under the common law, waiver can be express or can be established through a parties' actions. *See, e.g.*, *Motor Vehicle Bd. of Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999) (per curiam) ("Although waiver is ordinarily a question of fact, when the facts and circumstances are admitted or clearly established, the question becomes one of law."); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643–44 (Tex. 1996) (explaining that although "[w]aiver ordinarily is a question of fact," it becomes a question of law when "the facts and circumstances are admitted or clearly established," and holding that testimonial admissions proved waiver as a matter of law); *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987) (explaining that "the waiver of a condition precedent may be inferred from a party's conduct").

Although Ortiz characterized the Letter Agreements as express waivers for which no consideration was required, the parties were already in litigation with one another; thus, Ortiz was asking the trial court, in effect, to treat the Letter Agreements as releases. A release is a writing providing that a duty or obligation owed to one party to the release is discharged immediately. *See Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Ins. Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Fire Ins. Co.*, 20 S.W.3d 692 (Tex. 2000); RESTATEMENT (SECOND) OF CONTRACTS § 284 (1981). A release of a claim or cause of action extinguishes the claim or cause of action. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). But, none of the grounds expressly presented in Ortiz's summary-judgment motions or replies addresses the Bank Parties' summary-judgment responses that the Letter Agreements are releases for which consideration is required. *See U.S. Fire Ins. Co. v Republic Nat'l Life Ins. Co.*, 602 S.W.2d 527, 529–30 (Tex. 1980) (release requires consideration); *Torchia v. Aetna Cas. & Sur. Co.*, 804 S.W.2d 219, 223 (Tex. App.—El Paso 1991, writ denied) (same); *Leonard v Texaco, Inc.*,

16

422 S.W 2d 160, 165 (Tex. 1967) (settlement agreement requires consideration). *See also McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 335 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("Generally, a contract must be supported by consideration to be enforceable."). *Cf. Pate v. Eversole*, No. 14-03-00250-CV, 2004 WL 582319, at *1 n.1 (Tex. App.—Houston [14th Dist.] Mar. 25, 2004, pet. denied) (mem. op.) (settlement agreement concerning amount due under promissory note was supported by consideration in the form of a promise to postpone the foreclosure sale). In particular, Ortiz did not contend that there is a statutory exception to the common-law rule that a release requires consideration.

The common-law arguments in Ortiz's motion cannot support summary-judgment based on the Uniform Commercial Code because the U.C.C. "preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.'" *AMX Enters., Inc. v. Bank One, N.A.*, 196 S.W.3d 202, 207 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (quoting TEX. BUS. & COM. CODE ANN. § 1.103 cmt. 2). If, as Ortiz belatedly argued, section 3.604 rendered the Letter Agreements enforceable in the absence of consideration, then that provision conflicts with the common law that a release requires consideration. We then could not read Ortiz's motion for summary judgment based on the common law to encompass an argument that he is entitled to judgment based on a statute that preempts the common law. On the other hand, if section 3.604 does not apply to releases when, as here, claims between the parties are being actively litigated, then the statute and the common law do not conflict because the statute does not apply at all. Ortiz then would be not entitled to summary judgment based on the common law because there was no consideration for the release.[4]

---

[4] In his responsive brief, Ortiz contends that the there is a legal presumption that a written agreement was supported by consideration, and thus, the Bank Parties bore the burden to respond to the summary-judgment motion with evidence rebutting the presumption. This is incorrect. As the summary-judgment movant, Ortiz bore the burden in the trial court to establish his right to summary judgment as a matter of law. Because the Bank Parties pleaded the lack of consideration, Ortiz could not prove his right to judgment as a matter of law unless he conclusively established that the Letter Agreements were supported by consideration, or that no consideration was required. *See Brocail v. Detroit Tigers, Inc.*, 268 S.W.3d 90, 109 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (movant for traditional summary-

### b.    The grounds expressly presented in the motions also do not support summary judgment.

Because the Letter Agreements are ambiguous, we also cannot affirm the summary-judgment rulings based on the grounds expressly raised in the summary-judgment motions. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996) (explaining that even when the trial court identifies the basis for its summary-judgment ruling, the appellate court may consider other summary-judgment grounds that have been preserved for review).[5]  When we interpret a written contract, "our primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract." *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (orig. proceeding) (per curiam).  To understand the parties' intent as expressed in the agreement, it is essential that courts examine the contract as a whole in light of the circumstances present when the contract was entered. *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 450, 451 (Tex. 2011); *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 451 (Tex. 2008) (per curiam); *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).  No single provision is given controlling effect; instead, we consider all the provisions in all parts of the contract. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).  We also bear in mind the particular business activity to be served, and when possible and proper to do so, we avoid a construction that is unreasonable, inequitable, and oppressive. *Frost Nat'l Bank v. L & F. Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *U.S. Denro Steels, Inc. v. Lieck*, 342 S.W.3d 677, 682 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).  If the contract is

---

judgment is required to disprove allegations pleaded by nonmovant that would defeat summary judgment).  On appeal, the summary-judgment movant still bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).

[5] The Bank Parties raised the issue of ambiguity in response to the first summary-judgment motion, but not the second motion; however, the trial court stated in its order that it considered both summary-judgment motions and "all responses."  The trial judge submitted a jury question on intent.  In addition, the parties before us have presented arguments about whether the Letter Agreements unambiguously expressed an intent to waive or release all of the Bank's claims, or conversely, whether there was a question of fact about the Bank's intent.

subject to two or more reasonable interpretations after applying the pertinent rules of construction, then the contract is ambiguous. *XCO Prod. Co. v. Jamison*, 194 S.W.3d 622, 627 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). A contract is not ambiguous if it can be given a certain or definite meaning as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). The determination that a contract is or is not ambiguous is decided by the court as a matter of law. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

After reviewing the express language of the Letter Agreements in light of the circumstances present when they were signed and the business activity they were intended to serve, we conclude that there is more than one reasonable interpretation of the scope and conditions of the release. Although parts of the Letter Agreements use broad and sweeping language, other parts of the agreement identify the release as the result of the Bank Parties' foreclosure of the Birdsall Property in 2006. Thus, there is a question of fact as to whether the Letter Agreements express an intent to release Ortiz from all claims related to the property and to his indebtedness, or only an intent to release him from the indebtedness remaining after the sale of the Property.

In his letter of June 23, 2006, Ortiz's attorney Michael Donovan wrote as follows:

> This Agreement shall confirm that Lender has completed and will file an Internal Revenue Service Form 1099-A *in connection with its foreclosure* on the above-referenced property. *As a result*, it does not intend to and shall not file or pursue any lawsuit or other legal proceeding against Borrower for any deficiency or otherwise. Lender agrees to and does fully release Borrower from any and all obligations and liability that Borrower may have or may have had to Lender, and Lender waives any and all demands and claims regarding any such obligation or liability. It is agreed that no *further* sums will be made or owed by Borrower, and no *further* sums will be demanded or litigated by Lender.

(emphasis added). The letter was signed and returned by an employee of HLS, together with the requested information regarding Ortiz's Form 1099-A.

We find it significant that the Form 1099-A forms a part of the Letter Agreements.

19

Under federal income-tax laws, one who, in connection with his trade or business, lends money secured by property must provide a borrower with a Form 1099-A if the lender "in full or partial satisfaction of any indebtedness, acquires an interest in any property which is security for such indebtedness . . . ."  26 U.S.C. § 6050J(a)(1).[6]  As a result of the initial foreclosure, National City acquired an interest in the property on June 6, 2006 by purchasing it for $351,356.77; thus, it was required to provide Ortiz with a Form 1099-A.  At that time, the amount of Ortiz's indebtedness exceeded both the purchase price and the home's value; thus, there was an unanswered question as to whether National City would treat the foreclosure as full satisfaction of Ortiz's indebtedness, or only as partial satisfaction of the debt.  In other words, there was an open question of whether National City would pursue a judgment against Ortiz for the deficiency, i.e., the difference between the amount of indebtedness and the value of the property.  *See Kolbo v. Blair*, 379 S.W.2d 125, 130 (Tex. Civ. App.—Corpus Christi 1964, writ ref'd n.r.e.) ("Deficiency is that part of the secured obligation which remains after crediting it with the net proceeds accruing from a valid sale of the security by the creditor.").  In response to the letter, HLS provided Ortiz with the information about the foreclosure to be included on the Form 1099-A, and in this material, HLS identified the "debt outstanding" as $537,207.83.  In the Letter Agreement, HLS agreed that "as a result" of the foreclosure, it would not pursue "further" sums from Ortiz.  Thus, drawing all inferences in favor of the summary-judgment respondents, and considering the circumstances present at the time the Letter Agreement was executed, the document reasonably can be read as expressing HLS's intent to release only the deficiency by accepting the property as full satisfaction of the debt.  On the other hand, HLS stated that it would not pursue any legal proceeding "for any deficiency *or otherwise*."  This language reasonably could be read as an expression of the intent to release every claim related to the property.  Thus,

---

[6] *See also* INTERNAL REVENUE SERV., DEP'T OF THE TREASURY, 2006 INSTRUCTIONS FOR FORMS 1099-A AND 1099-C, Cat. No. 27991U, *available at* http://www.irs.gov/pub/irs-prior/i1099ac--2006.pdf ("File Form 1099-A, Acquisition or Abandonment of Secured Property . . . for each borrower if you lend money in connection with your trade or business and, *in full or partial satisfaction of the debt, you acquire an interest in property* that is security for the debt, or you have reason to know that the property has been abandoned.") (emphasis added).

20

the agreement is ambiguous.

This ambiguity was not resolved by the second Letter Agreement, which provided as follows:

> Thank you for providing a copy of the 1099-A and executing the letter agreement I sent regarding the above-referenced matter. It has come to my attention that National City Bank of Indiana was the current mortgagee and that First Franklin Financial Corporation was the original mortgagee. The letter agreement did not specifically reference National City Bank of Indiana.[7]

> Out of an abundance of caution, I am requesting that you please confirm, by signing where indicated below, that all of the terms and conditions of the June 23, 2006 letter agreement also apply to National City Bank of Indiana, as the Lender, and that National City Bank of Indiana also releases and waives any and all actual and potential demands and claims regarding any obligations or liabilities of the Borrower, Albert Ortiz, in connection with the above-referenced property, including the note and deed of trust associated with such property.

This letter incorporates "all of the terms and conditions" of the earlier letter—including those that made the first letter ambiguous. Moreover, the proposed amendment is ambiguous because it reasonably can be read as an agreement merely to add another party to the original agreement, or as an agreement expanding the scope of the claims released.

A narrow interpretation is suggested by the use of the phrase, "out of an abundance of caution." When a person states that he is taking some action "out of an abundance of caution," he saying, in effect, that the action likely is unnecessary, but is employed to remove any uncertainty. He is saying, in effect, "I think that I already have taken sufficient steps to achieve the same result, but I am taking this additional step to remove any doubt." *See e.g.*, *Fort Stewart Sch. v. Fed. Labor Relations Auth.*, 495 U.S. 641, 646, 110 S. Ct. 2043, 2047, 109 L. Ed. 2d 659 (1990) (explaining that "technically

---

[7] In the first letter, Donovan incorrectly identified the "Lender" as "First Franklin Financial Corporation / National City Home Loan Services, Inc."

21

unnecessary" provisions sometimes are "inserted out of an abundance of caution—a drafting imprecision venerable enough to have left its mark on legal Latin (*ex abundanti cautela*)."); *In re City of Georgetown*, 53 S.W.3d 328, 335–36 (Tex. 2001) (orig. proceeding) (explaining that although statutory redundancies were unnecessary, the legislature "repeated itself out of an abundance of caution, for emphasis, or both"); *Wright v. Macdonell*, 88 Tex. 140, 146, 30 S.W. 907, 909 (1895) ("[I]t is not unusual for the parties to a contract, out of abundance of caution, to express that which the law would have implied . . . .").

A narrow interpretation also is implied by the use of the word, "confirm." "[T]o confirm is to establish as true that which was doubtful or uncertain." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 292 (3d ed. 1996). The use of this word suggests that the intent was to *verify* that the same terms present in the first Letter Agreement apply to National City, not to enlarge the scope of the release.

On the other hand, one reasonably could read the second paragraph of the Letter Agreement as expressing an intent to agree to two things: first, to confirm that the terms of the first letter agreement apply to National City, and second, to expand the scope of the release. This interpretation is based on the statement that National City "*also* releases and waives any and all actual and potential demands and claims" against Ortiz. Because both of these interpretations are reasonable, the second Letter Agreement is ambiguous. The ambiguity of the Letter Agreements precluded summary judgment.

The trial court took one step to partially correct this error. Despite its interlocutory rulings on the partial motions for summary judgment, the trial court recognized that the Letter Agreements were ambiguous before the case was submitted to the jury, and included in the charge a question about the meaning of the Letter Agreements. *See Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 705 (Tex. 2008) ("[B]y sending the interpretation of the [agreements] to the jury, the trial court implicitly held that the [agreements] were ambiguous."). The question was presented as follows:

22

"With respect to the Letter Agreements, did HLS or National City validly agree that Albert Ortiz would receive ownership and possession of the Birdsall Property without obligation for further payments on the Note, and that HLS and National City would not pursue any claims, lawsuits and/or obligations that they could have asserted against Albert Ortiz?" The jury answered, "No."[8] In effect, the jury found that in executing the Letter Agreements, the Bank Parties did not agree to release Ortiz from any further obligation to make payments on the Note if he received ownership and possession of the Birdsall Property. This finding was supported by the evidence in the case. At trial, HLS's representative testified that the intent of the agreements was to release the deficiency. Ortiz's lawyer testified that he wanted to ensure that Ortiz did not owe any more money to the bank. After receiving the verdict, however, the trial court reversed its implicit holding that the Letter Agreements were ambiguous, and instead reinstated its earlier erroneous rulings on the summary-judgment motions and incorporated them into the final judgment. In a ruling that appears to have been based in part on the interlocutory summary judgments, the trial court further declared in the final judgment that Ortiz had no past, present, or future obligations under the Note and the Deed of Trust, a declaration that is contrary to the jury's finding, which the trial court apparently disregarded.[9]

---

[8] This question presents a mixed question of law and fact (i.e., the legal determination of whether the contract was valid and the factual determination of the Bank's intent). Mixed questions of law and fact are appropriate for the factfinder to decide. *See, e.g.*, *Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006); *Valence Operating Co. v. Anadarko Petroleum Corp.*, 303 S.W.3d 435, 441 (Tex. App.—Texarkana 2010, no pet.). If the trial court asks the jury to make a factual finding on a matter essential to a claim or defense, the jury's answer is not rendered immaterial merely because the question may have been defective. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). In such a situation, the trial court may grant a motion for a new trial, but it may not disregard the jury's finding. *Id.*

[9] The trial court did not expressly state that it disregarded any findings, but this is apparent from other language in judgment and from the result. In the final judgment, the trial court stated that "the motion of [Ortiz] for judgment on the verdict is GRANTED in part and that the motion of Defendants for judgment on the verdict is DENIED in part." Ortiz's motion actually was titled, "Plaintiff's Motion for Judgment on the Verdict *with Motion to Disregard Immaterial Jury Finding*," and the Bank Parties' motion was called "Defendants' Motion for Entry of Judgment *and to Disregard Certain Jury Findings*." (emphasis added). Although the trial court refers to both motions only as motions for judgment, the

We therefore conclude that the trial court erred in granting summary judgment and in incorporating those rulings in the judgment.

### c.   The trial court's erroneous summary-judgment rulings were neither waived nor harmless.

On appeal, Ortiz asserts that the Bank Parties waived any error by the trial court in considering summary-judgment grounds that were not presented in the motion but were raised orally at the summary-judgment hearing. He points out that the Bank Parties failed to object that the issue was untimely, but no such objection was necessary. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993) ("Even if the non-movant fails to except or respond, if the grounds for summary judgment are not expressly presented in the motion for summary judgment itself, the motion is legally insufficient as a matter of law."). Ortiz also argues that because the trial court permitted the parties to address these grounds, we should presume that the trial court gave him leave to amend his summary-judgment motion; however, he has not identified an amended summary-judgment motion in the record.

Ortiz further contends that even if the trial court erred in granting the summary judgments based on section 3.604, the error was harmless because the Bank Parties had an opportunity to brief the issue and the trial court fully considered the brief. But, summary-judgment grounds must be "expressly set out in the [summary-judgment] motion or in an answer or any other response." TEX. R. CIV. P. 166a(c). The Bank Parties' brief was not a "motion," and it was not an "answer or response" to a summary-judgment motion. Instead, it was a response to an oral argument, and summary judgment on a ground that is not expressly presented in the written motion, answer, or response is not properly before the trial court simply because it is addressed in a brief. *McConnell*,

---

substance of the ruling demonstrates that the trial court granted the portion of Ortiz's motion in which he asked the trial court to disregard the jury finding interpreting the Letter Agreements, and denied the portion of the Bank Parties' motion in which they stated, "In accordance with the jury's answer to Question 6 in the negative, the court should enter a judgment allowing National City to foreclose under the Deed of Trust."

858 S.W.2d at 341.

We also disagree with Ortiz's contention that the rulings, even if erroneous, were harmless. He reasons that the same result reached by the trial court was reached by the jury, because the jury found that National City breached the Deed of Trust before Ortiz did, and thus, failed to assess any monetary damages for Ortiz's breach. But as we have previously discussed, the evidence supporting this finding was based on legally insufficient evidence. Moreover, the trial court did not only fail to award monetary damages; it also denied the claim for judicial foreclosure, a result that is not supported by the jury's verdict. We further note that Ortiz's statutory argument was raised after the time for amending pleadings had passed, but the trial court denied the Bank Parties leave to amend their answers to plead mistake—even though this is a defense to renunciation of a debt under the statute. *See Gibraltar Sav. Ass'n v. Watson*, 624 S.W.2d 650, 653 (Tex. App.—Houston [14th Dist.] 1981, no writ). Finally, because the Letter Agreements are ambiguous, summary judgment based on section 3.604 was not just procedurally incorrect; it was substantively incorrect. *See Burton v. Nat'l Bank of Commerce of Dall.*, 679 S.W.2d 115, 118 (Tex. App.—Dallas 1984, no writ). In *Burton*, a bank sued a borrower for the deficiency remaining on a promissory note after the bank sold the collateral securing the loan. *Id.* at 116. Relying on the predecessor to the statute at issue here, the borrower argued that the bank waived the right to a deficiency judgment, and the bank argued that this was not its intent. *Id.* at 118.[10] The court concluded that determining the bank's intent was a question of fact to be resolved by the jury. We reach the same result here.

As the foregoing shows, the erroneous summary-judgment rulings were one of several ways in which the trial court addressed the interpretation of the Letter Agreements. We turn now to the trial court's ruling disregarding the jury's finding on

---

[10] The substantive text of Texas Business and Commerce Code section 3.604 formerly appeared at section 3.605. *See* Act of May 19, 1965, 60th Leg., R.S., ch. 785, § l, Sec. 3-605, 1965 TEX. GEN. LAWS 1, 80; Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, Sec. 3.605, 1967 TEX. GEN. LAWS 2343, 2438; Act of May 28, 1995, 74th Leg., R.S., ch. 921, § 1, Sec. 3.604, 1995 TEX. GEN. LAWS 4582, 4606.

25

that issue.

**2.  The trial court erred in disregarding the jury's finding interpreting the Letter Agreements.**

A trial court may disregard a jury finding only if it is unsupported by evidence or if the issue is immaterial.  *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994); *Lee v. Hasson*, 286 S.W.3d 1, 17 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).  A question is immaterial when it should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings.  *Spencer*, 876 S.W.2d at 157.  A jury question also can be considered immaterial when its answer cannot alter the effect of the verdict.  *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995); *Hernandez v. Atieh*, No. 14-06-00582-CV, 2008 WL 2133193, at *3 (Tex. App.—Houston [14th Dist.] May 20, 2008, no pet.) (mem. op.).

Here, Ortiz asserted that the trial court should disregard the jury's finding interpreting the Letter Agreements for several reasons.  We conclude, however, that none of these arguments have merit.

First, Ortiz asserted that the finding would not change the effect of the verdict and that it does not concern a controlling issue.  But, Ortiz's argument that the Bank Parties had released all claims for amounts due under the Note and the Deed of Trust was an affirmative defense to their claim for judicial foreclosure.  In rejecting Ortiz's interpretation of the agreements, the jury rejected his affirmative defense.  This finding on a controlling issue therefore made a difference in the effect of the verdict.

Ortiz also argued that the finding that the Bank Parties did not agree to forego all claims under the Deed and the Note was rendered immaterial by the jury's finding that Ortiz owes nothing under the Deed of Trust.  This argument is factually incorrect; the jury did not answer the question regarding the amount due under the Deed of Trust, because the jury erroneously concluded that National City breached the Deed of Trust first and National City's damage issue was predicated on an answer that Ortiz breached

26

first.[11]  The absence of a finding is not a finding.

Finally, Ortiz asserted that "the jury took into consideration and accounted for any amounts it may have found were owed by [Ortiz] in its award of damages to [him]."  We presume, however, that the jury followed the instructions in the charge.  *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 862 (Tex. 2009).  Here, each of the questions regarding Ortiz's actual damages was accompanied by the instruction, "Do not increase or reduce the amount in one answer because of your answer to any other question about damages."  The single question concerning exemplary damages to be assessed against HLS was accompanied by a list of the factors to be considered, and this list did not include consideration of the amount Ortiz owed to National City under the Deed of Trust.

Because no valid basis was asserted for disregarding the jury's finding interpreting the agreement, we conclude that the trial court reversibly erred in partially granting Ortiz's post-verdict motions and denying the Bank Parties' post-verdict and post-judgment motions concerning this question.  Although Ortiz used a variety of motions in asserting that the Letter Agreements prevented the Bank Parties from pursuing any claims against him, we have examined each of the challenged rulings and concluded that none are supported by the record.  We therefore sustain the Bank Parties' first issue.

The Bank Parties argued that if we sustained this issue, then we should render judgment in favor of National City in the amount of $1,012,982.90, which they state is the amount of the indebtedness established by the uncontroverted evidence.  Because we do not consider the record to be so clear that the amount of Ortiz's indebtedness is conclusively established, we conclude that remand is necessary to correct the error and

---

[11] The parties submitted the breach question in accordance with *Mustang Pipeline Co. v Driver Pipeline Co*., 134 S.W.3d 195 (Tex. 2004) and Texas Pattern Jury Charge 101.2 and then further conditioned damages so that jury would make a damage finding only for the party who did not breach first.  Practitioners should be careful not to over-predicate, especially if one party asserts a prior material breach as a matter of law.

establish the amount owed.

The trial court's rulings created an artificial distinction between the Note and the Deed of Trust; the disjunction between the two was so pronounced that there were different jury questions proposed for each, and the trial court submitted one question (predicated on a finding that a particular party breached first) and refused one of the questions (without such a predication). But, "in order to ascertain the entire agreement between contracting parties, separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together." *See Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 327 (Tex. 1984) (citing *Jones v. Kelley*, 614 S.W.2d 95 (Tex. 1981)); *Nevels v. Harris*, 129 Tex. 190, 195, 102 S.W.2d 1046, 1048 (1937) (deed of trust and notes for principal and interest must be treated as one contract because the borrowers executed them at the same time and for the same purpose of obtaining a loan secured by real property). National City's claims cannot be parsed fairly into claims under the Note and claims under the Deed of Trust, because the two documents form a single contract. *See* TEX. R. APP. P. 44.1(b) ("If the error affects part of, but not all, the matter in controversy and that part is *separable without unfairness* to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error.") (emphasis added). Both must be considered on remand in retrying National City's claims for breach of contract and judicial foreclosure.

But, just as National City's breach-of-contract claim must be retried to treat the Note and the Deed of Trust as a single contract, so too must Ortiz's breach-of-contract claim against National City be retried, because the cross-claims are not separable without unfairness to the parties. Moreover, the parties must be allowed to assert defenses to one another's claims; thus, for example, if Ortiz asserts that by executing the Letter Agreements, National City released of all of its claims without regard to whether the foreclosure was set aside, then the jury must be allowed to determine, as a question of fact, whether this was National City's intent. And, just as Ortiz may assert affirmative defenses to National City's claims, National City may assert any counter-affirmative

28

defenses, such as mistake.

## C.    Is Judicial Foreclosure Time-Barred?

In response to the Bank Parties' counterclaim to judicially foreclose on the Birdsall Property, Ortiz raised the affirmative defense that the claim was time-barred.  He moved unsuccessfully for a directed verdict on this basis, and his motion to modify the judgment on the same ground was overruled by operation of law.  On appeal, he contends that this defense has been conclusively established, and thus, the trial court erred in failing to grant either motion.  We address this issue because the resolution of this question of law affects the issues to be addressed on remand.

In appealing the denial of a motion for directed verdict, Ortiz in effect challenges the legal sufficiency of the evidence.  *See Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 265 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).  The test for legal sufficiency is the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review.  *City of Keller*, 168 S.W.3d at 823.  Where, as here, a party moves for a directed verdict on an issue on which he bore the burden of proof, he must demonstrate that that he conclusively proved all facts necessary to establish his right to the requested verdict.  *See Montgomery v. Byrd*, No. 14-07-01015-CV, 2009 WL 2589431, at *3 (Tex. App.—Houston [14th Dist.] Aug. 25, 2009, no pet.) (mem. op.).

Ortiz points out that on December 21, 2005, the Bank Parties sent Ortiz a notice that the debt had been accelerated, but the letter was mailed to the wrong address.  The Bank Parties faxed the same letter to Ortiz's attorney on January 13, 2006.  Ortiz contends that the cause of action for judicial foreclosure accrued on one of these dates.  Because National City did not file its judicial-foreclosure claim until February 3, 2010, which is more than four years after each of these dates, Ortiz contends that the claim is time-barred.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a) (West 2002) ("A person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues.").

29

Where, as here, a deed of trust contains an optional debt-acceleration clause, a cause of action for judicial foreclosure accrues when the note holder actually exercises its option to accelerate. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *CA Partners v. Spears*, 274 S.W.3d 51, 65 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). "Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration." *Holy Cross*, 44 S.W.3d at 566. "Notice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default prior to harsh consequences of acceleration and foreclosure." *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 234 (Tex. 1982). A notice that the debt actually has been accelerated is ineffective if it was not preceded by proper notice of intent to accelerate the debt. *Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674 (Tex. 1987). In addition, both the Note and the Deed of Trust in this case provided that a notice of acceleration "shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 [of the Deed of Trust] within which Borrower must pay all sums secured by [the Deed of Trust]." Under the terms of Section 15 of the Deed of Trust, all notices were to be mailed or otherwise delivered to "Borrower's notice address," which was defined to be "the Property Address unless Borrower has designated a substitute notice address by notice to Lender."

At no time before accelerating the debt did the Bank Parties provide proper notice to Ortiz of the intent to accelerate. According to the undisputed testimony presented at trial, Ortiz properly notified the Bank Parties that all required notices to him were to be sent to his business address. The Bank Parties failed to send the required notice of intent to accelerate and notice of acceleration to the specified address, and instead mailed the notices to the address of the Birdsall Property. On January 13, 2006, the attorney for the Bank Parties faxed to Ortiz's attorney copies of the following documents: (1) a default letter dated November 1, 2005 stating that the debt would be accelerated if it was not brought current by December 1, 2005; (2) a notice of acceleration, dated December 21, 2005; (3) a file-stamped notice of the foreclosure sale scheduled to take place on February 7, 2006, i.e., twenty-five days from the date of the fax; and (4) a "payoff quote

good through February 6, 2006," in which the total amount due from Ortiz was said to be $490,882.19. All of this material was sent to Ortiz's attorney at the same time, after the debt had been accelerated and less than 30 days before a scheduled foreclosure sale. Thus, the cause of action for judicial foreclosure did not accrue on December 21, 2005 or on January 13, 2006 as Ortiz contends, because there was no effective notice of acceleration at either of these times.[12]

Because Ortiz failed to establish conclusively that the judicial-foreclosure cause of action accrued more than four years before the claim was filed, the trial court did not err in denying Ortiz's motion for directed verdict. For the same reason, the trial court did not abuse its discretion in failing to modify the judgment to specify that the judicial-foreclosure claim is time-barred. We accordingly overrule Ortiz's fourth issue.

## D. Lis Pendens

In Ortiz's petition for a writ of mandamus, he argued that the trial court clearly abused its discretion by denying his motion to expunge the post-trial notice of lis pendens. By statute, "[a] party to an action in connection with which a notice of lis pendens has been filed may . . . apply to the court to expunge the notice . . . ." TEX. PROP. CODE ANN. § 12.0071(a)(1) (West Supp. 2012). "The court shall rule on the motion for expunction based on the affidavits and counteraffidavits on file and on any other proof the court allows." *Id.* § 12.0071(e). "The court shall order the notice of lis pendens expunged if the court determines that . . . the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim . . . ." *Id.* § 12.0071(c)(2).

In light of our determination of the issues presented in the Bank Parties' appeal and "the probable validity of the real property claim," we cannot conclude that the trial court abused its discretion in denying Ortiz's motion to expunge the notice of lis pendens.

---

[12] Indeed, in a motion for summary judgment, Ortiz stated,

> Ortiz never received . . . a notice of intent to accelerate the Note before learning that the Note had been actually accelerated and was being posted for sale. Thus, Ortiz never received the opportunity to avoid acceleration, as required by law and . . . the Deed of Trust.

We accordingly deny Ortiz's petition for writ of mandamus. *See* TEX. R. APP. P. 44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment . . . .").

## IV. CLAIMS AGAINST HLS

In the remaining issue asserted in Ortiz's cross-appeal, he points out that he presented three different theories of liability entitling him to damages from HLS for the loss of his personal property, and the jury answered a damage question associated with each theory. He argues that the trial court erred in awarding him the largest amount of damages assessed by the jury for this injury, rather than awarding him the sum of all three damage calculations for this loss.[13] Ortiz similarly asserts that he is entitled to recover damages from HLS for the loss of use of the real property, even though the trial court granted judgment against National City for that injury. As a result of our disposition of the other issues in this case, Ortiz is partially correct.

Absent an election, the trial court is required to render judgment "so framed as to give the party all the relief to which he may be entitled either in law or in equity." TEX. R. CIV. P. 301. But, under the one-satisfaction rule, a claimant is entitled to only one recovery for any damages suffered. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000) (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991)). The rule applies when different parties commit the same act or when different acts cause the same injury. *Id.* When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the prevailing party has a right to a judgment on the theory that affords him the greatest or most favorable relief. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).

Ortiz contends that he is entitled to recover the sum of all of the damages found by the jury for each injury under the various theories of liability submitted because the Bank

---

[13] HLS has not appealed the portion of the judgment in which the trial court held it to be liable to Ortiz for $100 in exemplary damages and $10,000 in actual damages, which represents the maximum amount found by the jury to be the fair market value of his personal property.

Parties (1) did not plead the one-satisfaction rule as an affirmative defense, (2) did not object to the submission of more than one acceptable measure of his damages, and (3) did not request a limiting instruction to prevent the possibility of a double recovery. No such actions were required. *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) ("'There can be but one recovery for one injury, and the fact that . . . there may be more than one theory of liability[] does not modify this rule.'" (alterations in original) (quoting *Stewart Title Guar. Co.*, 822 S.W.2d at 8)).

Here, the jury found that Ortiz suffered two injuries: the loss of personal property, measured by the property's fair market value, and the loss of the use of the real property, measured as lost rental value. Because the one-satisfaction rule no longer applies to one of these injuries, we discuss them separately.

## A.     Damages for Lost Personal Property

Ortiz asserted three different theories of liability for this injury, and the jury made favorable findings for each of them. Under a negligence theory of liability, the jury found that the fair market value of Ortiz's lost personal property was $10,000. Under theories of conversion and trespass to personalty, the jury found that the fair market value of the lost personal property was $1,500. The trial court rendered judgment against HLS for $10,000 in actual damages, which is the largest amount of damages assessed by the jury for this injury. Because an additional award for the same injury would be an impermissible double recovery, we overrule Ortiz's second cross-issue as it pertains to his damages for lost personal property.

## B.     Loss of the Use of Real Property

In the trial court, Ortiz alleged that National City's breach of contract and HLS's trespass to real property caused him to lose the use of the Birdsall Property. The jury agreed, and for each of these claims, the jury was asked to measure the damage by the property's lost rental value. Under the breach-of-contract theory, the jury found that the property's lost rental value was $100,000; under the trespass theory, the jury found that the lost rental value was $77,000. After applying a $12,500 settlement credit from a

defendant who settled before trial, the trial court rendered judgment against National City $87,500. The trial court did not render judgment against HLS for the damages for the same injury, because this would have constituted a double recovery.

On appeal, Ortiz argues that he is entitled to recover the damages assessed by the jury against HLS for loss of use of real property because the one-satisfaction rule does not apply. The Bank Parties respond that Ortiz is not entitled to recover from HLS for this damage because damages for the same injury were awarded against National City, and thus, an additional award against HLS for loss of use of the real property would constitute a double recovery. But, this is no longer the case. Because we have eliminated Ortiz's recovery against National City for loss of use of his real property, the one-satisfaction rule no longer applies to bar Ortiz's recovery for this injury from HLS.

We sustain this issue only as it pertains to the jury's finding that HLS caused Ortiz $77,000 in loss-of-use damages as a result of its trespass to real property. To the extent that Ortiz complains that the trial court erred in awarding him the greatest fair market value found by the jury for his lost personal property rather than awarding him an amount equal to the sum of the jury's three personal-property fair market-value findings, we overrule this issue. Because Ortiz is entitled to recover the highest amount that the jury found HLS caused Ortiz for (1) loss of use of the real property and (2) loss of the fair market value of his personal property, we modify the judgment to order that Ortiz recover actual damages from HLS in the amount of $74,500 (i.e., $10,000 for personal-property loss, plus $77,000 for loss of use of real property, minus the $12,500 settlement credit).[14]

## V. CONCLUSION

Regarding Ortiz's claims against National City, we hold that the evidence is

---

[14] On appeal, Ortiz argued that the settlement credit should not have been applied as an offset to any recovery for his breach-of-contract claim against National City. In response, the Bank Parties correctly pointed out that Ortiz sued National City, HLS and Keystone, the settling party, for trespass to real property. Moreover, Ortiz alleged that the Bank Parties were liable with Keystone because its acts or omissions were committed as the Bank Parties' agent, and because the Bank Parties ratified, adopted, and accepted the benefits of Keystone's actions. Ortiz does not contend that the settlement credit does not apply to the real-property damages assessed against HLS for its trespass, and he points out that a nonsettling defendant can claim a settlement credit for damages for which all joint tortfeasors are jointly liable.

34

legally insufficient to support the finding that National City breached the Deed of Trust before Ortiz did. Moreover, the Letter Agreements signed by National City's representative are ambiguous; thus, Ortiz did not establish as a matter of law that National City is barred from recovering amounts owed under the Note and the Deed of Trust or from judicially foreclosing on the Property. Instead, there is a question of fact regarding the parties' intentions. Ortiz also did not establish that National City's claims for judicial foreclosure are time-barred. Although the trial court's rulings erroneously divided the parties' breach-of-contract claims into claims under the Note and claims under the Deed of Trust, the two documents must be construed as a single contract. Because these parties' various breach-of-contract claims against one another are not separable without unfairness to the parties, we must remand both of their contract claims for retrial.

As for Ortiz's claims against HLS, we hold that the trial court did not err in limiting Ortiz to one recovery for loss of the use of the real property, and one recovery for the loss of his personal property; however, as a result of our conclusion that there is legally insufficient evidence to support the jury's finding that National City breached the Deed of Trust first, the damages based on this finding cannot stand. This leaves only one damage award for the loss of the use of the real property; thus, Ortiz is no longer barred by the one-satisfaction rule from recovering those damages from HLS.

For these reasons, we deny Ortiz's petition for a writ of mandamus, and we

(a) reverse the portions of the judgment

(1) holding National City liable to Ortiz for actual damages, interest, and attorneys' fees;

(2) providing that National City takes nothing by its claims;

(3) denying National City's request for judicial foreclosure;

(3) declaring that the "Note and the Deed of Trust are fully, completely, and finally satisfied and no past, present, or further obligations or sums are or shall become due and owing under said Note and Deed of Trust"; and

35

(4)     providing that "all partial and/or interlocutory judgments heretofore granted in this case are hereby made final and incorporated into this Final Judgment";

(b)     modify the amount of the actual damages awarded against HLS, replacing the award of $10,000 in actual damages with an award of $74,500, which represents the largest amounts found by the jury for the injuries caused by HLS (i.e., $10,000 for the fair market value of Ortiz's personal property and $77,000 for the loss of the use of the real property, reduced by the $12,500 settlement credit);

(c)     affirm the remainder of the judgment as modified; and

(d)     remand the case with instructions to the trial court to

(1)     sever National City's claims from the remainder of the case; and

(2)     retry National City's severed claims.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Frost, Brown, and Christopher (Frost, J., dissenting).